*In re* MARRIAGE OF JOYCE ANN PAULEY, Petitioner-Appellee, and GARY LEON PAULEY, Respondent-Appellant.

Fourth District   No. 17321

Opinion filed March 3, 1982.

John Naylor, of Naylor, Mueller & Freese, of Bloomington, for appellant.

Thomson, Weintraub & Thompson, of Bloomington (Alan I. Weintraub, of counsel), for appellee.

JUSTICE MILLS delivered the opinion of the court:
Divorce.
Unilateral reduction of child support by the father.
Under the decree here—we reverse and remand.

### FACTS

Gary and Joyce Pauley were divorced on June 18, 1976. Physical custody of their three sons—Mike, Kevin, and Scott—was awarded to Joyce. With respect to child custody, the divorce decree stated that:

> "H shall pay W child support equal to 35% of his net income * * *. [W]hen the oldest child of the parties leaves home or reaches age 18, said child support shall be reduced to 30%; when the second oldest child leaves home or reaches age 18, said child support shall be reduced to 25%; when the youngest child reaches age 18 or leaves home, said child support shall be re-examined by the Court in light of college expenses and other matters.
> , * * *
>
> The Court reserves for future consideration any obligation by H or W with regard to college expenses * * *."

In September 1977, Mike (the oldest child) became 18 years old and the father reduced support payments to 30% of his net income. In February 1978, the mother petitioned the court seeking additional funds for Mike's education at Illinois Wesleyan University. The trial court determined that she was entitled to 35% of the father's net income as child support and as contribution to Mike's college expenses. The court had found that the mother was not entitled to an amendment or modification of the divorce decree but rather ordered the award pursuant to the terms of the decree which reserved the question of college expenses.

In May 1979, Kevin (the middle son) became 18 years old and the father reduced the support to 30% after Kevin graduated from high school that year. The mother did not contest this reduction. In September 1979, Kevin began residing with his father, who is voluntarily contributing to Kevin's educational expenses. As a consequence, there is no question on payment with respect to Kevin.

In May 1980, Scott (the youngest child) became 18 years old. His father continued paying 30% until Scott completed high school and then reduced support to 5%. Scott began classes as a freshman at Illinois Wesleyan in August 1980 and on September 11, 1980, his mother filed a petition seeking, *inter alia*, additional support for Scott and Mike who were both attending college. On February 13, 1981, their mother filed a rule to show cause for past-due child support. An amended petition for rule to show cause alleged that the father's deficiencies in support payments from 1977 through 1980 amounted to $9,440.11. Of the alleged arrearage, $6,271.56 had accumulated in 1980 which was when the father had reduced payments from 30% to 5%.

The court found that the father was not entitled to reduce support from 30% to 5% and determined that there was an arrearage of $7,715.20 representing the period of time from March 29, 1980, to April 2, 1981. This amount was reduced to a final judgment against the father.

### ISSUE

The sole point of contention is whether the father was entitled to reduce support payments from 30% to 5% when his youngest son, Scott, graduated from high school. Two arguments are presented that assert he was not entitled to reduce support. First, the trial court interpreted the divorce decree as providing that child support was to be re-examined when Scott turned 18 and was not to terminate at that time. The second argument, made by the mother, is that the 1978 court order raising support from 30% to 35% did not allocate 5% to Mike's education and 30% to child support but was an unapportioned award which could not be reduced until a court so ordered.

### OPINION

The relevant portion of the divorce decree states that "when the youngest child reaches age 18 or leaves home, said child support shall be re-examined by the Court in light of college expenses and other matters." This language implies that child support was not to terminate automatically. However, this interpretation cannot be sustained when the decree is read in the context of Illinois statutes and case law.

The general rule is that child support terminates when the child reaches majority. Section 510(c) of the Illinois Marriage and Dissolution

of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 510(c)) provides that "[u]nless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, except as otherwise provided herein * * *." The Illinois Supreme Court interpreted this section in *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12. The court considered section 510(c) to be a declaration of the common law rule that the obligation to support terminated upon emancipation. The court stated:

> "Prior to the adoption of the new act, our appellate courts have held that a parent's obligation to support a minor child did not extend beyond the age of minority unless otherwise provided in the decree or as authorized by statute. [Citations.] We agree with the appellate court opinion of *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, wherein the court found that the provisions of the new act do not extend the parental obligation for support beyond minority except in limited statutory situations. (See, *e.g.*, Ill. Rev. Stat. 1977, ch. 40, par. 513.)" 81 Ill. 2d 317, 326, 410 N.E.2d 12, 16.

Section 513 of the Act authorizes a court to order support for nonminor children when the child is physically or mentally disabled or when educational expenses are sought. The 1976 decree before us did not provide support for the educational expenses of nonminor children. The decree stated that the question of educational expenses was to be reserved for future consideration. The support awarded in the decree was support for the three minor children, and this type of support terminates when the children are emancipated.

■■ We conclude that the divorce decree did not obligate the father to continue paying child support after the youngest child attained majority.

The mother argues that as a result of the 1978 court order raising support from 30% to 35%, the father was not entitled to unilaterally reduce this amount. She relies on *Finley* to support this argument. In *Finley*, a divorce decree entered in 1965 ordered the defendant to pay $30 per week for the support of his four minor children. The decree made no provision for a reduction in child support when a child reached majority. Nevertheless, when defendant's oldest son joined the Army in 1966, defendant decreased support payments by one-fourth. Four years later, defendant's oldest daughter married and he again reduced payments by one-fourth. In 1975, defendant's third child became 18 and he reduced support by one-fourth so that his weekly payments were $7.50. In 1977, defendant's ex-wife filed a petition seeking child support arrearage.

The supreme court phrased the issue as "whether a parent who has been ordered by a divorce decree to pay a collective or lump sum weekly for the support of four minor children may unilaterally reduce the amount of such payments *pro rata* as each child is emancipated." (*Finley v. Finley*

(1980), 81 Ill. 2d 317, 321, 410 N.E.2d 12, 14.) The court held that such a *pro rata* reduction was not permissible. The rationale for this holding was that modifications of child support payments are a judicial function, and any reduction made in a multichild support order at the emancipation of one of the children is a matter solely for judicial determination.

The support payments in *Finley* consisted entirely of support for minor children and the defendant had reduced payments as each child was emancipated. Since the award was unapportioned with respect to the children, it was a matter for the courts to determine how much of the award was attributable to each child. In this case, the support payments were a *combination* of support for *minor* children and support for the educational expenses of an *adult* child. Gary Pauley reduced payments when there were no longer minor children to support. If his payments were unapportioned as between minor child support and educational expenses, the rationale of *Finley* suggests that he was not entitled to unilaterally reduce support.

But the father argues that his payments were apportioned. Prior to the 1978 order, he had reduced support from 35% to 30% when Mike was 18 years old. This was in accordance with the divorce decree. The 1978 order restored support to 35%. He interprets this order as adding 5% for Mike's college expenses to the 30% in minor child support that he was already paying. When Kevin turned 18, he reduced support to 30%. This reduction was based on his understanding that the divorce decree required him to pay 25% in child support after the second son became 18 and the 1978 order required him to pay 5% for Mike's college expenses. He reduced payments from 30% to 5% when Scott, the youngest son, graduated from high school, reasoning that the 25% child support payments ordered by the divorce decree had terminated at that time.

In support of his argument that the 1978 order consisted of 30% child support plus 5% college expenses, the father relies on the order itself and the court's docket entry. While allowing the 35% award, the court found that the mother was not entitled to a modification of or an amendment to the divorce decree. The father argues that since the order did not modify or amend the divorce decree, his obligation of 30% for child support was unchanged. Since the order raised the level of support to 35%, the additional 5% must have been for Mike's college education. This interpretation of the order is bolstered by the trial court's docket entry which stated that the "court finds that the actual question to be ruled on is support for the oldest child, Michael, while he attends college, such ruling having been reserved in the original divorce decree."

The mother argues that the 1978 order was unapportioned. She relies on the opinion of the court below in which the trial judge said that "the restoration of the 35% level from 30% for support in 1978 because of Mike's

being in school did not allocate just 5% to him but rather restored the reasonable total level of the three children."

■■ We conclude that the father's payments were apportioned. Under the divorce decree, he was obligated to pay 25% of his net income for the support of his youngest son after the two older boys were emancipated. This obligation was to terminate when Scott attained majority. The decree was never amended or modified. Therefore, when Scott turned 18, he was no longer obligated to continue paying 25% for Scott's support and was entitled to reduce support payments from 30% to 5%. Accordingly, there is no arrearage as a result of this reduction.

■■ Although no arrearage is due, the mother is nevertheless entitled to reimbursement for the educational expenses of Mike and Scott. In determining these expenses the guidelines of section 513 are to be followed. The court is to consider the financial resources of the parents and the children and the standard of living the children would have enjoyed had the marriage not been dissolved. Furthermore, section 513 authorizes a court to provide for the education *and maintenance* of the child. Therefore, educational expenses are to include more than just tuition and book fees. The mother is entitled to reasonable living expenses for Mike, who was living on campus, and Scott, who was residing at home.

Reversed and remanded.

WEBBER and LONDRIGAN, JJ., concur.